```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON
```

UNITED STATES OF AMERICA,          )
                                   )
    Plaintiff,                     )
                                   )  Criminal No. 5:11-CR-149-JMH
                                   )
v.                                 )
                                   )  **MEMORANDUM OPINION AND ORDER**
MONTEZ LAMONT GRAVES,              )
                                   )
    Defendant.                     )

                    ** ** ** ** **

This matter is before the Court upon Defendant Montez Lamont Graves's motion to suppress all evidence obtained as the result of a search incident to his arrest on July 17, 2011. [DE 12]. The United States has filed a response in opposition to the motion. [DE 15]. Additionally, a hearing on this motion was conducted before the Court on February 7, 2012. The Court orally announced its holding after the hearing. The purpose of this Memorandum Opinion and Order is to supplement the Court's earlier oral pronouncement.

**I.   BACKGROUND**

Based upon the testimony provided at the hearing and the evidence in the record as well as the briefs submitted by the parties, the Court finds the facts to be as set forth below.

On June 3, 2011, Sergeant Todd Phillips[1], of the Lexington Metro Police Department's ("LMPD") CLEAR Unit[2], arrested Defendant Graves for carrying a concealed deadly weapon. The firearm Graves possessed was later determined to have been stolen and Phillips filed a complaint against Graves for the additional charge of receiving stolen property. Graves was arraigned on July 7, 2011 for this offense and a preliminary hearing in Fayette District Court was scheduled for July 11, 2011. While Sergeant Phillips was present for the hearing on July 11, Graves was not. At the conclusion of that morning's proceedings, Fayette District Judge Bouvier – in open court and in the presence of Sergeant Phillips – issued an oral warrant for Graves's arrest, based on his failure to appear at the hearing. Immediately after Judge Bouvier issued the warrant, Sergeant Phillips left the courtroom. Unbeknownst to Phillips, Judge Bouvier recalled the bench warrant later that day upon learning that Graves had been on trial in Anderson County at the time of his scheduled hearing in Fayette Circuit Court.

Later that same day, without reason to suspect that Graves's arrest warrant had been recalled, Sergeant Phillips advised some of the other CLEAR officers that Judge Bouvier had issued a bench

---

[1] At the time of Defendant's June, 2011 arrest, Phillips had not yet been promoted to the rank of Sergeant.

[2] The CLEAR Unit is a special task force, made up of Lexington Metro Police officers, which focuses on proactive law enforcement and community involved policing in specific areas of Lexington. CLEAR stands for "Community Law Enforcement Action Response."

warrant for Graves's arrest. Having been arrested many times over the past several years, Defendant Graves was well-known to officers of the LMPD. The CLEAR Unit was scheduled to provide police presence during a neighborhood event in Lexington called "Super Sunday", an event which included the "Dirt Bowl" basketball tourney, on July 17, 2011. Because Graves was known to frequent the neighborhood in which the event was to be held, officers thought it likely that Graves would attend the Super Sunday event. On the morning of July 17, Sergeant Phillips reminded the other CLEAR Unit members to be on the lookout for Graves.

While managing traffic around the park where the festivities took place, Officer Corey Doane observed Graves walking up Georgetown Street toward a convenience store. Based on past experience with Graves, Officer Doane believed him to be dangerous and radioed for backup, intending only to observe Graves until help arrived. When Graves entered the convenience store, however, Officer Doane decided that the most prudent action was to make contact with Graves while in the confines of the store. That way, Officer Doane reasoned, if Graves attempted to flee, he would have fewer avenue of escape. As Officer Doane entered the store, Graves was exiting. Doane advised Graves that the police needed to speak with him and that there was possibly an outstanding warrant for his arrest. Based on Graves's history of violence and fleeing police, Officer Doane immediately placed Graves in handcuffs and escorted

3

him just outside of the store. Doane then radioed the police information channel to confirm the existence of an arrest warrant for Graves. Graves quickly became combative – vigorously protesting the existence of a warrant and breaking free of the escort position in which Officer Doane had been holding him. After throwing a few kicks at Officer Doane, Graves began to run and jumped down a retaining wall that was a short distance away. At that point, Graves fell to the ground and other officers were able to regain control of him.

Based on Graves's actions, Officer Doane decided to place him under arrest for the state law misdemeanor of menacing. *See* KRS 508.050. Graves was searched incident to his arrest. The search produced 3.6 grams of cocaine and $293 in Graves's pants pocket. After the arrest for menacing and the search incident thereto, the officers received a response, through the police radio system, informing them that Graves did not have an active arrest warrant. As officers attempted to place Graves in the back of a police cruiser, he again broke free and began swinging his flared elbows, striking Officer Terry, another CLEAR member who was on the scene. After officers regained control and placed Graves into the cruiser, they observed a nine millimeter semi-automatic pistol, which turned out to be loaded, in the waistband of Graves's pants.

Graves argues that each of the items seized should be suppressed that, because there was not an active warrant for his

4

arrest, the events leading to their discovery violated his rights under the Fourth Amendment. For the following reasons, Graves's motion will be denied.

## II. DISCUSSION

Contrary to Defendant Graves's argument regarding the nature of his initial encounter with Officer Doane, the stop did not constitute an arrest. Although there is no litmus test for determining when a seizure exceeds the bounds of an investigative stop, the question is resolved by considering the reasonableness of the stop under the circumstances. *See U.S. v. Hardnett,* 804 F.2d 353, 356 (6th Cir. 1986). Upon making contact with Graves, Officer Doane informed him that members of the LMPD needed to speak with him regarding the possibility of an outstanding warrant. Officer Doane did not tell Graves that he was under arrest, nor did he state that Graves definitely had an outstanding arrest warrant. Rather, he alerted Graves to the possibility of a warrant and expressed his desire to detain him briefly while he determined whether a warrant actually existed. Additionally, the time that elapsed between Officer Doane's initial contact with Graves and Graves's arrest for menacing was less than two minutes. This encounter is the type of brief, investigative stop contemplated by *Terry v. Ohio,* 392 U.S. 1 (1968). Despite Graves's argument to the contrary, Officer Doane's use of handcuffs did not transform the stop into a formal arrest. *See Houston v. Clark Cnty. Sheriff*

*Deputy John Does 1-5,* 174 F.3d 809, 815 (6th Cir. 1999)(placing suspect in handcuffs, when reasonably necessary for the protection of the officer, did not turn a seizure into an arrest). Officer Doane was well aware of Graves's history of violence and possessing weapons, as well as his tendency to run from the police. Based on his concern for his own safety, as well as that of members of the public attending the Super Sunday events, Officer Doane reasonably chose secure to Graves with handcuffs.

To justify making an investigative stop, an officer must have "a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Johnson,* 627 F.3d 578, 583 (6th Cir. 2010). The information supplying the reasonable suspicion can come from some other person – not just the investigating officer's own observations. *United States v. Marxen,* 410 F.3d 326, 330 (6th Cir. 2005). Officer Doane testified that on the morning of July 17, 2011, Sergeant Phillips informed him, for the first time, that Defendant Graves probably had an active warrant for his arrest. Sergeant Phillips recounted to Doane his experience in the Fayette Circuit Court, when Judge Bouvier had issued the bench warrant. It is essential to law enforcement that police officers be able to rely on information transmitted to them by their fellow officers. *See United States v. Hensley,* 469 U.S. 221, 231 (1985). Because Sergeant Phillips's statements to Officer Doane were based on

specific, articulable facts supporting a reasonable suspicion that Graves had committed an offense, Officer Doane's reliance on those statements justified his brief stop of Graves. *See id.*

Search incident to arrest is a well-established exception to the warrant requirement. *United States v. Robinson,* 414 U.S. 218, 226 (1973). Simply put, Defendant Graves engaged in activity that resulted in his arrest. Had Graves not assaulted Officer Doane, the police would have had no probable cause to arrest him for menacing and, thus, there could have been no lawful search. As the result of Graves's conduct, however, police were able to conduct a full search of his person. *See id.* Accordingly, the fruits of that lawful search will not be suppressed.

### III. CONCLUSION

**IT IS ORDERED** that Defendant's motion to suppress [DE 12] is hereby **DENIED.**

This the 9th day of February, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

7